945 F.2d 628
 CHEZ SEZ III CORP., a corporation of the State of New
Jersey; Jack Chesner, Appellants,
v.
TOWNSHIP OF UNION, a political sub-division of the State of
New Jersey; Salvatore J. Mauro, Construction
Official of the Township of Union, in
his official capacity, Appellees.
 No. 90-5912.
 United States Court of Appeals,
Third Circuit.
 Argued April 3, 1991.
Decided Sept. 24, 1991.
 
 Lewis H. Robertson, (argued), Evans, Osborne & Kreizman, Little Silver, N.J., for appellants.
 David B. Zurav, (argued), Union, N.J., for appellees.
 Before MANSMANN and HUTCHINSON, Circuit Judges, and O'NEILL, District Judge.*
 OPINION OF THE COURT
 O'NEILL, District Judge
 Chez Sez III Corp. and its shareholder Jack Chesner appeal from an interlocutory order of the district court denying their motion for a preliminary injunction and administratively terminating their federal lawsuit pending the resolution of state law questions by the New Jersey state court. We find that abstention was proper and that appellants are unlikely to prevail on the merits of their suit. We will therefore affirm the decision of the district court.
 I.
 The facts of this case are not in dispute. Appellant Chez Sez III Corp. ("Chez Sez") operates an adult book and videotape store in Union Township, New Jersey. Chez Sez sells adult books and magazines, sundries, adult games and novelties, adult videotapes, and videotape players. In addition, it offers videotape player repair services and rentals of adult videotapes and portable video cameras. Until September 17, 1990, Chez Sez also provided private video presentations in eight individual coin-operated booths. A customer could enter one of the booths and, for each quarter inserted, view one 90-second segment of video film taken from Chez Sez's stock of videotapes. It is Union Township's termination of the use of these booths which gives rise to this dispute.
 The property leased by Chez Sez for its retail store is located in a "Business B" zoning district as defined by the Union Township Land Development Ordinance ("Zoning Ordinance" or "Ordinance"). The Zoning Ordinance requires varying numbers of off-street parking spaces depending upon the use of the property. For retail uses, one off-street parking space for each 200 square feet of gross floor area must be provided. For theater uses, one space for every three seats is required. The configuration of the property on which Chez Sez is located makes it impossible to provide the requisite number of parking spaces for either of these uses. However, since the property's use as a retail establishment predates the effective date of the Zoning Ordinance provisions regarding off-street parking, the use of the property for retail sales and services has been allowed as a nonconforming use with respect to the off-street parking requirements.
 Union Township has taken the position that the video viewing booths installed by Chez Sez constitute a new, non-retail use of the property. On August 1, 1990, the Union Township Board of Adjustment (the "Board") held a hearing pursuant to an application by Chez Sez and its shareholder Jack Chesner seeking an interpretation of the Zoning Ordinance. The Board found that the video booths did not constitute a retail use of the property. Since customers could come in, view a number of tapes and leave the premises without purchasing or renting any merchandise from the store, the Board found the video booths to be separate and distinct from the store's sales, rental and service functions. It concluded that the video booths were more in the nature of an amusement or movie theater use and thus were not permitted as a retail use under the Zoning Ordinance.
 The Board then went on to find that the video booths did not constitute a theater use under the Ordinance either, since the provisions of the Zoning Ordinance dealing with theaters seemed to contemplate only large, auditorium-type uses rather than small private areas where individuals could observe videos in complete privacy. The Zoning Ordinance provides that any use not specifically permitted under the Ordinance is prohibited. The Board thus concluded that since video booths are not a valid retail use or theater use, the video booths operated by Chez Sez are prohibited in all of Union Township.
 On September 17, 1990, following the decision of the Board, Union Township Construction Official Salvatore Mauro and several police officers entered the Chez Sez premises, evicted several patrons from the video booths, and erected a plywood wall at the entrance to the video viewing room to prevent its further use. The video booths and the portion of the store where they are located have not been used since that time.
 II.
 Chez Sez and Chesner filed a complaint in the District Court of New Jersey on September 28, 1990, seeking to have the court: (1) declare the Board's interpretation of the Zoning Ordinance unconstitutional; (2) enjoin the Township from enforcing the Ordinance (as interpreted by the Board) against them; and (3) require Construction Official Mauro to issue a certificate of occupancy allowing Chez Sez to operate video viewing booths on its current premises.
 The district court found that a prohibition against all showing of video films in private booths in any part of the Township would be a violation of Chez Sez's First Amendment rights. However, the district court also concluded the Board's interpretation of the Zoning Ordinance lacked rationality. It predicted that a New Jersey court would most likely interpret the Zoning Ordinance to find that video booths are a "theater use" under the Ordinance. Although theaters are not permitted on this particular property, because it is not large enough to include the requisite number of off-street parking spaces for theater uses, the video booths would, if classified as a theater use, be permitted elsewhere in the Township. The district court thus concluded that Chez Sez's First Amendment claim would be eliminated if the booths were found to be a "theater use" under the Ordinance.
 Since the district court found that the Zoning Ordinance was amenable to a construction by the state courts which would obviate the need for federal adjudication of a constitutional issue, it decided to abstain pursuant to the doctrine articulated in Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in order to allow the state court to rule in the first instance upon the proper interpretation of the Zoning Ordinance.
 The district court also denied appellants' request for preliminary injunctive relief based on its prediction that the Zoning Ordinance would be interpreted to find that video booths were a "theater use" under the Ordinance. Since Chez Sez could constitutionally be prohibited from operating a "theater" in this particular location, the district court denied Chez Sez's request for injunctive relief and administratively terminated its lawsuit. Chez Sez and Chesner then filed suit in the Superior Court of New Jersey on October 26, 1990.
 We have jurisdiction over the appeal from an order administratively terminating a lawsuit pending the resolution of state court proceedings. 28 U.S.C. § 1291; Biegenwald v. Fauver, 882 F.2d 748, 750 (3d Cir.1989). In addition, we have jurisdiction over the appeal from an interlocutory order denying a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).
 III.
 In general, federal courts are bound to adjudicate all controversies which are properly before them. New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 2512-13, 105 L.Ed.2d 298 (1989). Abstention from the exercise of federal jurisdiction is appropriate only under certain limited circumstances, for abstention is "the exception, not the rule." Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). However, when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, abstention may be justified under principles of comity in order to avoid "needless friction with state policies." Railroad Comm'n of Texas v. Pullman, 312 U.S. at 500, 61 S.Ct. at 645. This doctrine is commonly referred to as "Pullman abstention."
 The first step in the Pullman analysis is to determine whether three special circumstances exist:
 (1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court;
 (2) State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims;
 (3) A federal court's erroneous construction of state law would be disruptive of important state policies.
 D'Iorio v. County of Delaware, 592 F.2d 681, 686 (3d Cir.1978), overruled on other grounds, Kershner v. Mazurkiewicz, 670 F.2d 440, 448 (3d Cir.1982) (in banc).
 If the district court finds that all three of the "special circumstances" are present, it must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of these criteria and other relevant factors. Id.
 In reviewing a district court's abstention decision, we apply two separate standards of review. The district court's determinations as to the first two "special circumstances", that is, whether state law is uncertain and whether state law is amenable to a construction that would obviate or narrow the constitutional issues presented, are essentially legal decisions which are to be reviewed de novo by this court. Id. However, the district court's appraisal of the third factor, that is, whether an erroneous decision of state law by the federal court would disrupt important state policies, is more discretionary in nature and thus, if it is adequately explained, will be accorded greater deference by the appellate court. Id.
 If we agree with the district court that all three of the "special circumstances" are present and that the case thus falls within the general ambit of Pullman, "the remaining question is whether the trial judge abused his discretion in weighing the advantages and disadvantages of abstention and deciding to invoke the Pullman doctrine." Id. (quoting Frederick L. v. Thomas, 578 F.2d 513, 517 (3d Cir.1978)).
 IV.
 With these general principles in mind, we will now consider the applicability of the Pullman abstention doctrine to the circumstances of this particular case.
 The federal constitutional claim made by appellants here is that the Zoning Ordinance, as construed by the Board, totally prohibits private video viewing booths from all parts of Union Township and thus impermissibly infringes on appellants' constitutional right to freedom of expression under the First Amendment.[1] See, e.g., Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). On its face, the Union Township Zoning Ordinance does not specifically prohibit video viewing booths from the Township. The Ordinance instead sets forth the types of uses which are permitted in the various zoning districts of Union Township, then states that "[a]ll uses not expressly permitted by this ordinance are prohibited." Ord.Sec. 613.I. Since the Board found that video viewing booths did not constitute a permitted use under the Ordinance, it concluded that such booths were prohibited in all districts of Union Township.
 There are only two classifications of uses permitted in Union Township into which the video viewing booths could conceivably fall: (1) "Stores and Shops for Retail Sales of Goods and Services", and (2) "Motion Picture Theaters". Ord.Sec. 605. A "Retail Store" is defined under the Ordinance as "[a] building or part thereof in which or from which merchandise is sold directly to the ultimate consumer." Ord.Sec. 200. Similarly, a "Retail Shop" is defined as "[a] building or part thereof in which or from which a service is rendered directly to the ultimate consumer." Ord.Sec. 200. Motion picture theaters are not defined under the Ordinance.
 A. Uncertainty of State Law
 For Pullman to apply, the state or local law underlying the federal constitutional issue must be uncertain. D'Iorio, 592 F.2d at 686. Our initial inquiry focuses on whether the language of the Ordinance is "clear and unmistakable." Hughes v. Lipscher, 906 F.2d 961, 965 (3d Cir.1990). Chez Sez takes the position that a "retail shop" (as defined by Ord.Sec. 200) can include video viewing booths since they provide "a service ... directly to the ultimate consumer." However, the Board found, and the district court agreed, that since customers could come in and view several videotapes without ever purchasing or renting any merchandise from the store, the video booths were separate and distinct from the store's sales, rental and service functions, and thus did not constitute a retail use of the property. Since we find that either interpretation constitutes a plausible construction of the Ordinance, the language of the Ordinance is ambiguous on its face.
 Similarly, since the term "motion picture theater" is not defined under the Ordinance at all, it is unclear whether the term encompasses only large, auditorium-style uses, as the Board found, or whether it could instead be read more broadly to also include private video viewing booths of the type involved here. The term "motion picture theater", as it is used in the Ordinance, is also ambiguous on its face.
 If an otherwise ambiguous statute has been authoritatively construed by the state courts, abstention would not be appropriate. United Servs. Auto. Ass'n v. Muir, 792 F.2d 356, 361 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987). The sections of the Union Township Zoning Ordinance here at issue have never been interpreted by the New Jersey courts. Although the Board of Adjustment has made a definitive ruling interpreting these sections of the Ordinance, "an administrative interpretation of a facially ambiguous statute will not remove the ambiguity, for Pullman purposes." Id. at 362. We therefore conclude that the Zoning Ordinance presents unsettled issues of state law, and that the first of the three Pullman factors has thus been met.
 B. Effect of State Law on the Constitutional Claim
 The second factor to be considered in the Pullman analysis is whether the Ordinance is amenable to an interpretation by the state courts that would obviate the need for or substantially narrow the scope of the constitutional issues. D'Iorio, 592 F.2d at 686. We are not concerned with whether there is "a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary", but rather whether the Ordinance is "obviously susceptible of a limiting construction". Hawaii Housing, 467 U.S. at 237, 104 S.Ct. at 2327 (emphasis in original).
 Appellants' constitutional claim is that the Zoning Ordinance, as construed by the Board, totally prohibits video viewing booths in all parts of Union Township in violation of appellants' First Amendment right to freedom of expression. However, the state court might conclude that private video viewing booths constitute a "motion picture theater" use under the Zoning Ordinance. If so, Chez Sez could operate its video viewing booths in any district of Union Township where theaters are permitted, and the basis for its constitutional claim would be eliminated.[2]
 This case presents exactly the type of state law question that usually triggers Pullman abstention, where "the unsettled issue of state law principally concern[s] the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation." Baggett v. Bullitt, 377 U.S. 360, 376-77, 84 S.Ct. 1316, 1325, 12 L.Ed.2d 377 (1964). The second Pullman factor has thus been met.
 C. Effect of an Erroneous Federal Court Decision of State Law
 In evaluating the third Pullman factor, whether an erroneous decision by the federal court would be disruptive of important state policies, this court will generally defer to the district court's appraisal if it is "adequately explained." D'Iorio, 592 F.2d at 686. The district court found that "zoning regulations implicate important state policies" and that an "erroneous[ ] constru[ction of] the Zoning Ordinance in this case ... would be disruptive of those policies." App. at 112. We agree. Land use issues are an area of particularly local concern which involve questions of both state and municipal law. As Justice Marshall stated in Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (dissenting on other grounds):
 
 
 1
 I am in full agreement with the majority that zoning is a complex and important function of the State. It may indeed be the most essential function performed by local government, for it is one of the primary means by which we protect that sometimes difficult to define concept of quality of life ... Our role is not and should not be to sit as a zoning board of appeals.
 
 
 2
 416 U.S. at 13, 94 S.Ct. at 1543. Since we find that there is an adequate basis for the district court's conclusion that land use issues implicate the type of important state policies for which Pullman abstention is appropriate, the third Pullman prerequisite has also been met.[3]
 
 D. Equitable Considerations
 
 3
 Having found that all three of the "special circumstances" necessary to invoke the Pullman doctrine are present in this case, the only question remaining is whether the district court abused its discretion by abstaining in this case. We have held that "absent significant reasons to the contrary, abstention is generally proper once it [has been] ascertained that the threshold 'special circumstances' have been fulfilled." D'Iorio, 592 F.2d at 691-92.
 
 
 4
 Chez Sez argues that the potential deprivation of its First Amendment rights during the pendency of the state court adjudication is of such importance as to render abstention inappropriate in this case. However, while the Supreme Court has been "particularly reluctant to abstain in cases involving facial challenges to the First Amendment," City of Houston v. Hill, 482 U.S. 451, 468, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987) (emphasis added), an "as applied" challenge presents different considerations. When a facial challenge is involved, abstention is generally not appropriate because "extensive adjudications, under a variety of factual situations, [would be required to bring the statute] within the bounds of permissible constitutional certainty," Baggett v. Bullitt, 377 U.S. 360, 378, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964), a result which would be "quite costly where the vagueness of a state statute may inhibit the exercise of First Amendment freedoms." Id. at 379, 84 S.Ct. at 1326-27.
 
 
 5
 Such concerns, however, are not implicated where an "as applied" challenge to the First Amendment is made. We are presently faced with a challenge that the Union Township Zoning Ordinance is unconstitutional, not on its face, but only as it was interpreted by the Union Township Board of Adjustment and applied to the appellants. Where the state courts can, in a single proceeding, determine the bounds of the state statute by choosing between one or several alternative meanings of the statute, abstention has been held proper even where a First Amendment challenge is concerned. See, e.g., Babbitt v. United Farm Workers, 442 U.S. 289, 308, 99 S.Ct. 2301, 2314, 60 L.Ed.2d 895 (1979). The mere fact that the Ordinance is being challenged on First Amendment grounds is not enough to automatically render Pullman abstention inappropriate in this case.
 
 
 6
 In sum, we find that the district court did not abuse its discretion in abstaining pursuant to the Pullman doctrine. We will therefore affirm the district court's decision to abstain in this case.
 
 V.
 
 7
 In addition to abstaining in this action, the district court denied appellants' motion for injunctive relief.[4] We review the denial of a preliminary injunction for an abuse of discretion, error in applying the law, or a clear mistake in considering the proof. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir.1989).
 
 
 8
 A preliminary injunction is an "extraordinary remedy" which will be granted only if the moving party can demonstrate:
 
 
 9
 (1) the reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."
 
 
 10
 Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d at 800 (quoting In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir.1982)). In applying this standard, the district court concluded that a preliminary injunction was not warranted in this case because appellants were unlikely to succeed on the merits of their suit.
 
 
 11
 We agree. The Board concluded, and the district court agreed, that the video booths installed by Chez Sez were not a retail use of its property. Even though Chez Sez's premises could not conform with the parking requirements of the Ordinance, appellants had been permitted to continue using the property for retail purposes because the property was used for retail purposes before the parking requirements were enacted. See N.J.S.A. 40:55D-68. However, under New Jersey law, a nonconforming use cannot be expanded to include other types of uses:
 
 
 12
 our courts have held that an existing nonconforming use will be permitted to continue only if it is a continuance of substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance. In that regard nonconforming uses may not be enlarged as of right except where the change is so negligible or insubstantial that it does not warrant judicial or administrative interference. Where there is doubt as to whether an enlargement or change is substantial rather than insubstantial, the courts have consistently declared that it is to be resolved against the enlargement or change.
 
 
 13
 Belleville v. Parrillo's, Inc., 83 N.J. 309, 316, 416 A.2d 388, 391-92 (1980) (citations omitted). Thus, Chez Sez may not use the property for any use other than retail sales and services. Since the district court found that video booths were not a retail use, it concluded that appellants were prohibited, under New Jersey law, from operating video booths on this particular property.
 
 
 14
 Appellants argue that their constitutional rights have been violated because the Board interpreted the Ordinance as prohibiting video booths in all of Union Township. The district court, however, found the more plausible interpretation of the Ordinance to be that video booths are permitted in any zone where theaters are permitted. Under this interpretation, while Chez Sez could not operate a "theater" in its present location, since that would be an expansion of a nonconforming use, it could operate such theaters elsewhere in the Township.
 
 
 15
 Appellants, however, are not seeking to operate elsewhere in Union Township. The only relief they seek is to be able to operate video booths on this particular property. Appellants never attempted to operate video booths at another location nor did they ever express any intent to do so. Thus, even if the state court were to find that video booths are permitted elsewhere in Union Township, as the district court predicts, appellants would not be entitled to the relief they are seeking.
 
 
 16
 In sum, the district court found that video booths are likely to be permitted elsewhere in Union Township. The district court also found that Chez Sez was prohibited from operating video booths on this particular property because New Jersey law prohibits the expansion of a nonconforming use. Under such circumstances, the district court's refusal to grant a preliminary injunction allowing appellants to operate video booths in their present location was neither an abuse of discretion nor an error of law. We will therefore affirm the order of the district court denying appellants' motion for a preliminary injunction.
 
 VI.
 
 17
 We conclude that the district court properly abstained pursuant to the Pullman doctrine, and that the district court properly denied appellants' motion for a preliminary injunction. We will therefore affirm the decision of the district court.
 
 
 
 *
 Honorable Thomas N. O'Neill, Jr. of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In applying the Pullman doctrine, we need not reach the issue of whether such a prohibition would, in fact, constitute a violation of Chez Sez's First Amendment rights
 
 
 [2]
 Appellants make no claim that Union Township could not constitutionally restrict the location of video viewing booths (and other "theaters") within the Township, but only that a complete ban on this medium of expression throughout the Township would violate their First Amendment rights
 
 
 [3]
 Our decision in Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743 (3d Cir.), cert. denied, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), is not to the contrary. Heritage Farms was a civil rights action involving allegations of conspiracy on the part of local zoning officials. In that case, we found that the "mere presence of land use issues" was not enough to "trigger a mechanical decision to abstain", id. at 748, where there were no unsettled issues of state law to be resolved. Here, however, we are clearly presented with an unsettled issue of land use law
 
 
 [4]
 Although the district court decided to abstain in this action, it was still obliged to consider appellants' request for preliminary relief. New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 887 (3d Cir.1981)