**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1383
_____

CONSOL PENNSYLVANIA COAL COMPANY, LLC

v.

MAHALAXMI CONTINENTAL LIMITED; MAHALAXMI INDIA PRIVATE
LIMITED; MAHALAXMI ASSOCIATES PRIVATE LIMITED; MAA KAMAKHYA
COKE INDUSTRIES; MAHALAXMI WELLMAN FUEL LLP; UNIVERSAL
OVERSEAS PTE LTD,
Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-22-cv-00781)
District Judge: Honorable W. Scott Hardy
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 8, 2023

Before: RESTREPO, SCIRICA, and SMITH, *Circuit Judges.*

(Filed:  February 9, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Defendants-Appellants, a group of affiliated entities we will refer to collectively as Mahalaxmi,[1] challenge the District Court's order denying their motion to dismiss Plaintiff-Appellee's complaint and vacate a temporary restraining order ("TRO") for lack of personal jurisdiction, and, alternatively, to stay proceedings and compel arbitration. We will affirm.

I.[2]

Plaintiff-Appellee Consol Pennsylvania Coal Company, LLC ("Consol") is a Pennsylvania-based producer and exporter of coal. Mahalaxmi, which imports and uses coal, is composed of various foreign entities located in India and Singapore. Mahalaxmi initiated negotiations with Consol for the purchase of coal from Consol's mines in Pennsylvania, resulting in three agreed-upon purchase orders between 2017 and 2020. In 2021, Mahalaxmi approached Consol to purchase additional shipments of coal. The parties exchanged a draft purchase order, but Consol's Risk Management Committee ("RMC") rejected the deal before it could be finalized.

Mahalaxmi initiated arbitration proceedings before the American Arbitration

---

[1] Defendants are Mahalaxmi Continental Limited, Mahalaxmi India Private Limited, Mahalaxmi Associates Private Limited, MAA Kamakhya Coke Industries, Mahalaxmi Wellman Fuel LLP, and Universal Overseas PTD Ltd.

[2] We write solely for the parties and therefore only briefly recite the essential facts. The factual background is derived from the Complaint, as well as affidavits and unsworn declarations proffered by the parties. On a motion to dismiss for lack of personal jurisdiction, we accept Consol's allegations as true and construe any disputed facts in favor of Consol. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

Association ("AAA"), asserting the parties consummated the fourth putative purchase order. Consol then commenced this action, seeking (1) a declaration that no contract was formed between the parties and (2) an order enjoining Mahalaxmi and the AAA from proceeding with the arbitration. On June 14, 2022, the District Court purported to issue a TRO enjoining the arbitration from proceeding "pending further Order of Court." Dkt.[3] 21 at 5–6. In the same order, the District Court deferred a decision on Consol's request for a preliminary injunction.

Mahalaxmi then moved to dismiss this action and vacate the TRO for lack of personal jurisdiction, or, in the alternative, to stay this proceeding and compel arbitration. The District Court denied both motions on February 9, 2023. The District Court denied the motion to stay and compel arbitration without prejudice so that the parties could take discovery on whether the parties formed a valid agreement. Mahalaxmi timely appealed.

## II.

Mahalaxmi challenges the District Court's denial of both motions. Before reaching the merits of either issue, we must address the question of our appellate jurisdiction.[4] *See Papotto v. Hartford Life & Accident Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013). While neither party has challenged our appellate jurisdiction, "it is well established that we have an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the

---

[3] "Dkt." citations refer to the docket before the District Court, *Consol Pa. Coal Co., LLC v. Mahalaxmi Cont'l Ltd.*, No. 22-cv-781 (W.D. Pa.).
[4] The District Court had jurisdiction under 28 U.S.C. § 1332.

parties' positions." *Id.* (quoting *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 112, 118 (3d Cir. 1999)).

The analysis of our appellate jurisdiction over the personal jurisdiction question is somewhat complicated by language used by the District Court and the parties to describe the emergency relief enjoining the arbitration. The parties and the District Court refer to the relief in place as a TRO, and the District Court never purported to issue a preliminary injunction. However, we conclude that the District Court's June 14, 2022, order was one issuing a preliminary injunction, not a TRO.

"In a determination of whether an order is injunctive, a district court's characterization of its order is not dispositive. . . . [W]hat counts is what the court actually did, not what it said it did." *Ramara v. Westfield Ins. Co.*, 814 F.3d 660, 669 (3d Cir. 2016). When a TRO extends "far beyond" the fourteen-day period mandated in Federal Rule of Civil Procedure 65(b), the order "lose[s] its character" as a TRO and becomes an appealable preliminary injunction. *In re Arthur Treacher's Franchise Litig.*, 689 F.2d 1150, 1154 (3d Cir. 1982). The District Court's June 14, 2022 order did not include an expiration date, and instead enjoined the arbitration from proceeding until the order was "modified or vacated by further Order of Court." Dkt. 21, at 6. The District Court did not deny Mahalaxmi's motion until 240 days after the date it purportedly entered the TRO—"far beyond" Rule 65's presumptive fourteen-day window. *See Arthur Treacher's*, 689 F.2d at 1154. Accordingly, the District Court's June 14, 2022 order was one issuing a preliminary injunction, not a TRO.

4

The distinction between a TRO and a preliminary injunction is of jurisdictional consequence because an order granting a TRO is generally not immediately appealable. *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159 (3d Cir. 2020). Moreover, an order finding personal jurisdiction is generally interlocutory and not appealable. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 149 (3d Cir. 2001).

We do, however, have jurisdiction to review interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). As the preceding discussion highlights, the District Court's February 9, 2023 order was one "refusing to dissolve or modify" an injunction. We accordingly have appellate jurisdiction. And while we would typically be precluded from reviewing the District Court's order finding personal jurisdiction over Mahalaxmi at this stage in the litigation, "[i]nterlocutory orders that are 'inextricably bound' to an injunction may also be considered in the same appeal." *Gen. Elec Co.*, 270 F.3d at 149 (quoting *Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir. 1982) (en banc)). Here, "[t]he order finding personal jurisdiction is essential to the validity of the injunction in this case. If jurisdiction does not exist, then the District Court necessarily lacked the power to issue the injunction." *Id.* at 150. The personal jurisdiction matter is thus properly before us so that we may evaluate whether the District Court had the power to issue the injunction in the first instance.[5]

---

[5] In *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, we refused to exercise pendent appellate jurisdiction to review the merits of a personal jurisdiction challenge where it was not "interrelated" or "intertwined" with the merits of the immediately appealable arbitration order. *See* 269 F.3d 187, 202–05 (3d Cir.

5

We have jurisdiction to review the District Court's refusal to compel arbitration under 9 U.S.C. § 16(a). *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 102 (3d Cir. 2000) (finding § 16(a) provides for appellate jurisdiction where a district court denies a motion to compel arbitration so that it can first evaluate whether the parties entered into a binding agreement).

## III.

### A.

The District Court did not err in finding it had specific personal jurisdiction over Mahalaxmi.[6] Under Pennsylvania law, specific personal jurisdiction over a nonresident defendant is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed

---

2001). While here, as in *DuPont*, the arbitrability issue "can be discussed at length and resolved without any reference to whether there was personal jurisdiction over appellants," *id.* at 204, the instant case does not implicate a question of pendent appellate jurisdiction. Appellants in this case are subject to an injunction and have challenged the District Court's personal jurisdiction determination as it relates to the order refusing to dissolve that injunction. The personal jurisdiction issue is thus immediately and independently appealable under 28 U.S.C. § 1292(a)(1). The parties in *DuPont*, in contrast, were not subject to an injunction, so the personal jurisdiction issue was neither independently appealable nor sufficiently intertwined with the appealable arbitration question. As we noted in *DuPont*, "[i]t is well-settled that when a court grants an injunction, the underlying personal jurisdiction decision is immediately reviewable on appeal." 269 F.3d at 205 n.9.

[6] "Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law, and this court's review is therefore plenary." *Vetrotex Certainteed Corp. v. Consol. Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (quoting *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 554 (3d Cir. 1993)). "If the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction." *Metcalfe*, 566 F.3d at 330 (internal quotation marks omitted). On a motion to dismiss for lack of personal jurisdiction, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *See id.*

6

under the Constitution." 42 Pa. Cons. Stat. § 5322(b). To determine whether a defendant has sufficient minimum contacts with the forum state, a court must determine whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Under our precedent,

> [t]he inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two components are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (2007) (internal quotation marks, brackets, and citations omitted).

As the District Court found, Mahalaxmi purposefully availed itself of the privilege of conducting business in Pennsylvania by engaging in "repeated and purposeful contacts with Consol in Pennsylvania over a period of years such that it should reasonably anticipate being haled into court here." JA 9. Among other contacts, Mahalaxmi executives worked with a Pennsylvania coal broker who facilitated discussions with Consol, ultimately leading to the three purchase orders for Mahalaxmi to acquire coal sourced, prepared, and shipped from Pennsylvania. Mahalaxmi directed communications regarding the prior three purchase orders and the disputed fourth purchase order to Consol executives in Pennsylvania. Mahalaxmi executives also traveled to Pennsylvania on multiple occasions to negotiate deals with Consol. Mahalaxmi's communications and

7

dealings with Consol in negotiating and executing the first three purchase agreements formed the relationship that led to the fourth putative agreement that gave rise to this litigation. Moreover, Mahalaxmi executives purposefully reached into Pennsylvania to communicate with Consol executives to negotiate the disputed agreement. Accordingly, the District Court correctly determined Mahalaxmi had sufficient minimum contacts with Pennsylvania and that the instant dispute arises out of or relates to those contacts. *Cf. Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 149–50 (3d Cir. 1992) (finding minimum contacts where a Louisiana real estate developer initiated telephone calls and sent mail correspondence to New Jersey and attended a meeting in New Jersey to facilitate the closing of a loan).

The District Court correctly determined that subjecting Mahalaxmi to its jurisdiction would not offend traditional notions of fair play and substantial justice. As we have previously noted, once a plaintiff establishes minimum contacts, the exercise of personal jurisdiction is presumptively constitutional, and "the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477). Mahalaxmi has made no such showing. As the District Court noted, "[t]he record is . . . devoid of information to indicate that adjudicating [in Pennsylvania] would be unfair, unduly burdensome, or unreasonable." JA 10. While litigating this claim in the United States may be burdensome for some foreign defendants, Mahalaxmi already seeks to resolve this claim via arbitration in the United States and has demonstrated its ability to conduct business here via its prior dealings with Consol. Moreover, Pennsylvania has a

8

legitimate interest in providing a forum for its domestic corporations to resolve claims arising out of their business dealings in the commonwealth. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701–02 (3d Cir. 1990). Exercising personal jurisdiction over Mahalaxmi therefore does not violate notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476.

B.

The District Court did not err in denying Mahalaxmi's motion to stay the proceeding and compel arbitration.[7] Mahalaxmi contends the parties formed a contract for a fourth purchase order and, accordingly, that the parties are compelled to bring "[a]ll claims, disputes, or controversies" arising out of the agreement before the American Arbitration Association in New York. *See* Mahalaxmi Br. 23 (quoting JA 309). Consol disputes whether the parties ever formed a contract for the putative fourth purchase order.

When ruling on a motion to compel arbitration, a district court must determine whether to apply the motion to dismiss standard or the motion for summary judgment standard. *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 767 (3d Cir. 2013). The motion to dismiss standard is appropriate "when it is apparent, based on the face of the complaint, and documents relied upon in the complaint that certain of a party's claims

---

[7] "We exercise plenary review over a district court's order on a motion to compel arbitration." *Jaludi v. Citigroup*, 933 F.3d 246, 251 n.7 (3d Cir. 2019). Similarly, we exercise de novo review over a district court's order refusing a stay pending arbitration. *Field Intel. Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 355 (3d Cir. 2022).

are subject to an enforceable arbitration clause." *Id.* at 776 (internal quotation marks

omitted). In contrast,

> if the complaint and its supporting documents are unclear regarding the
> agreement to arbitrate, or if the plaintiff has responded to a motion to
> compel arbitration with additional facts sufficient to place the agreement to
> arbitrate in issue, then the parties should be entitled to discovery on the
> question of arbitrability before a court entertains further briefing on [the]
> question. After limited discovery, the court may entertain a renewed motion
> to compel arbitration, this time judging the motion under a summary
> judgment standard.

*Id.* (alteration in original) (internal quotation marks and citation omitted).

The District Court faithfully applied these principles in denying Mahalaxmi's

motion. As the District Court noted, "the crux of the parties' dispute is whether they

formed a coal purchase agreement containing an arbitration provision, which is the

essence of Consol's complaint." JA 12. Consol's complaint alleges the parties were still

negotiating the terms of the fourth purchase order but that a final agreement was never

reached because Consol's RMC rejected the deal. Mahalaxmi argues the parties did, in

fact, reach an agreement via a written purchase order and that the purchase order contains

an applicable arbitration provision. Because Mahalaxmi's motion was not predicated on a

complaint nor supporting documents "with the requisite clarity to establish on its face

that the parties agreed to arbitrate," the District Court was correct to deny the motion

pending further development of the factual record on the existence of an agreement

between the parties. *Guidotti*, 716 F.3d at 775 (internal quotation marks omitted).[8]

---

[8] Mahalaxmi contends even if contract formation between the parties is in dispute, that
issue must be resolved in arbitration. This view is mistaken. District courts have the
authority to adjudicate contract formation challenges "unless the parties have clearly and

IV.

For the foregoing reasons, we will affirm.

---

unmistakably referred formation issues to arbitration in a written contract whose formation is not in issue." *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022). As previously noted, the crux of the dispute between the parties is contract formation. Mahalaxmi also appears to argue Consol waived its opposition to Mahalaxmi's motion to compel arbitration by failing to directly oppose the motion in the District Court. This argument is squarely contradicted by the record.